Court of Appeals in and toward the Seventh Judicial Circuit, here ye, here ye, here ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good afternoon, everyone. Before we begin our arguments, let me just make sure that we have, in fact, everyone properly hooked up. Mr. Schoenfeld, are you here? I am, Your Honor. Can you hear me? Yes, I can. Excellent. And Mr. Casey? I am, Your Honor. Excellent. Okay. Well, in that case, we are ready to hear arguments this afternoon in the case of Purkey v. United States, which is number 19-3318. And I believe we begin with Mr. Schoenfeld. Thank you, Your Honor. And Judge Senev and Judge Brennan, are you able to hear me okay? Yes, thank you. Okay, thank you very much. May it please the Court, Allen Schoenfeld for Petitioner Appeal on Wesley Purkey. Wesley Purkey was convicted at trial and sentenced to death. As the Court is now aware, the government has scheduled his execution for July 15th. No Court has heard his substantial claims about the ineffectiveness of his trial counsel. I want to address two issues. Petition number 2241 is available to a death-eligible federal prisoner who was unable to present a meritorious, ineffective assistance at trial counsel on their initial 2255 motion. So, Mr. Schoenfeld, let me just ask you a question. Over the years since AEDPA was passed, I can't tell you how many applications for permission to file a second or successive motion under Section 2255 I've seen in which the person wants to raise an ineffectiveness of counsel claim. But then you go back and look and you see in the first 2255, somebody did raise ineffectiveness of counsel, say for reasons 1, 2, and 3. Now the person wants to make an ineffectiveness claim for reasons 4, 5, and 6. So in that sense, no Court had in the country, to my knowledge, will always decline permission to file the second or successive because there has been an airing of the Sixth Amendment claim, which is understood to be one claim, not the individual parts of it. So could you tell me how your rule fits with that? Sure. I'm not certain that's correct, Your Honor. I think that when you're looking at an ineffective assistance of trial counsel claim, you have to look at what the particular ineffective assistance is. It's not enough to say that it's one ineffective assistance of counsel claim. Here, there are ineffective assistance of trial counsel claims, at least, that go to, for example, juror number 13 and the seating of a juror who was biased as a matter of law. No Court has ever heard that claim. No, but I'm saying that that happens before. I mean, trust me, it really does happen in a lot of cases. So I wonder whether you can point us to a case where, again, staying for the moment just inside the conventional 2255, because obviously a Sixth Amendment claim is a constitutional claim, why that's not understood to be already adjudicated, even though certain aspects of the ineffective counsel weren't aired? Sure. I understand the question. I can't point to a case standing in front of the Court right now where this has been so, but I think that the restriction on 2255 second or successive motions goes to the substance of the claim and not merely how it's been labeled. And so if there are ineffective assistance of counsel claims that weren't aired during the trial, because there was ineffective assistance of 2255 counsel, I don't think the Court would necessarily treat that as a second or successive habeas petition. I think the Court goes beyond the sort of formal nomenclature of the claim and looks to the precise substance of the allegation. Why, in fact, was trial counsel ineffective? And so I think ineffective assistance of counsel claims brought in habeas petitions are usually brought as separate freestanding counts with respect to the precise type of ineffectiveness claimed below. And so one might relate as here to the seating of a biased juror. Another might relate to the failure to present a comprehensive mitigation case. Mr. Schoenfeld, even if that's true, if they're viewed separately and not as the same claims, to pick up on Judge Wood's question, are there any cases that you can identify where a request for a successive petition raising an additional or a new ineffective assistance of counsel claim was permitted where there wasn't some change in the law or constitutional reason that would allow for the second petition to be brought? So, again, I'm not able to point to a case where a second or successive 2255 petition could be brought based on new allegations of ineffectiveness of counsel. But, again, this is a 2241 petition, and I don't think the government has made any argument that Mr. Perkey could have brought a second or successive 2255 petition. Their argument in this case is that a 2241 petition is unavailable to a federal defendant like Mr. Perkey, and our submission to the court is, when you have been denied your opportunity or when you are structurally prohibited from bringing an ineffective assistance of trial counsel claim on direct appeal, as you are in the federal system under Massaro and under this court's decision in Ramirez, and you've been deprived of effective assistance of counsel at the 2255 stage, what work is this safety valve in 2255 really doing for you? Well, you know, it's doing a fair amount of work, as other cases, including Davenport and Webster and so on, have shown. What I'm having trouble, too, grasping is, let's put a successive 2255 off the table. I actually agree that the criteria are very strict, and it's quite rare to see one of those granted. But what's the difference between an unsuccessful effort to show ineffectiveness of counsel under a 2255 and one where there's no opportunity? What the government is arguing is that Mr. Perkey, through his 2255 counsel, did have an opportunity. It's just that he didn't win. So that's one question. I actually have another question, which is, suppose you won, and there was a 2241, and somebody wants to come along and say, heaven forbid, that you were ineffective at the 2241. Do we get another 2241 round? Do we, like, keep doing this forever? So to answer your second question first, no, I don't think that's the case. I think the court was very clear in Martinez and Trevino and Davila that the critical question here is whether you have the opportunity for someone like a federal prisoner who doesn't have the opportunity to raise an ineffective assistance of trial counsel arguments on direct appeal, whether you had an opportunity in your initial collateral review proceedings to get a reliable determination, a reasonable opportunity to get a reliable determination about the fundamental legality of your conviction. And I don't think there's any dispute here that with respect to the claims that he's presenting on his 2241, there's been no opportunity to present them. But I think, actually, I'm going to stop you on that premise. I think there is a dispute because he could have brought these claims in his initial 2255. His lawyer just didn't. Exactly. And I think that that's exactly where we get to the language of 2255e and Martinez and Trevino. And I think, as this court noted in Ramirez, Martinez and Trevino required this court to substantially change the way they think about initial collateral review proceedings with respect to ineffective assistance of trial counsel claims that cannot be presented on direct appeal. Mr. Shainfield, on that point of Ramirez, are you asking us, because both parties argued scope, are you asking us to apply Ramirez and that Ramirez answers this question or do we have to extend our law past the Rule 60b context to cover these circumstances beyond where Ramirez is? So, to be candid with the court, I think we're asking for the recognition of a new claim that can be brought on at 2241. I do think the logic, however, of Ramirez is merciless. It says that it applies to 2255 for federal prisoner just as it applies, just as Martinez and Trevino apply to 2254. And while the context of Ramirez was a Rule 60b motion, it makes no difference for these purposes because, again, the question this court needs to answer is a question of statutory interpretation with respect to 2255e. What was 2255? Can I just suggest that it depends how you look at Ramirez, and it also depends on how you compare 2254s and 2255s. What Trevino and Martinez are looking at is the first opportunity somebody has to be in federal court on a presentation of their constitutional arguments, the vehicle, of course, for a state prisoner being 2254. So maybe you've had a couple of rounds in the state court, you know, but procedural defaults and the like are excused. In the case of a 2255, it's a more compact procedure, if you will. You've had your direct appeals. Then your motion under 2255 is the congressional substitute for habeas corpus for federal prisoners for reasons that we all understand. And so in some ways, each of them is looking at that first opportunity to present to the federal district court whatever the arguments may be. And, you know, again, maybe you win, maybe you lose. Maybe you've got a good lawyer, maybe you have not such a good lawyer. But where do you get that it's not a real opportunity unless you have effective counsel? Well, so a couple of observations or a couple of points here. I think first off, as the court pointed out, it was either Webster or Ramirez. If anything, 2255 should be broader for federal prisoners because 2254I precludes relief when the grounds for relief is the ineffectiveness of collateral review counsel either in state or federal habeas proceedings. And there's no such prohibition on 2255. I think you're exactly right, Chief Judge Wood, that that's one way to think about what Martinez and Trevino are getting at. I think the other way to think about it is if you are deprived on your initial opportunity because, again, it may be the case that 2254 is a bit more reticulated and so you have direct appeal in state court, you've got collateral review in state court, and then you've got collateral review in federal court. But what I think Martinez and Trevino are trying to get at is if you were deprived of your opportunity, your one opportunity to present an ineffective assistance of trial counsel claim because of the ineffectiveness of your initial collateral review counsel. And I don't think it matters whether that's in state or federal court. And for the reasons I just explained, I think it should be even more permissive in federal court. But if you didn't have that opportunity to present a claim of a meritorious claim of ineffective assistance of trial counsel, one opportunity because of the ineffectiveness of your initial habeas counsel or 2255 counsel, I think Martinez and Trevino, as this court recognized in Ramirez, should apply here to give you that opportunity. And so, again, the question under 2255E is have you had one reasonable opportunity to get a reliable determination of the underlying legality of your conviction? And where you can't bring an ineffective assistance of trial counsel claim on direct appeal and where, as a death-eligible defendant, you have been given a statutory right to 2255 counsel under 3599 and that counsel was ineffective, you must have one opportunity to present your ineffective assistance of trial counsel. Mr. Schoenfeld, if we agree with you, why wouldn't this open the floodgates to 2241 litigation for federal cases? It's a great question. Where would you recommend drawing the line on what type of cases can be brought?  They cover not only ineffective counsel, but if a defendant brings the claims him or herself and doesn't have the opportunity to raise. So I assume you would say the same would apply here, that whether counsel is ineffective or the defendant didn't bring the claims, then they wouldn't have the opportunity for the first round of litigation in post-conviction so they'd be entitled to a 2241. Is that correct? I think that is correct, but I think the question the court needs to answer here is a narrower one, as we put it in our brief. This is a question of a death-eligible federal defendant who was given a statutory right to effective 2255 counsel in Section 3599. So that is your distinction, then, because, I mean, with the death is different arguments, sometimes those arguments are based just on a gut feeling. Obviously death is different in that it's permanent, but we look in the law for something that we can understand is a limiting principle, and I didn't pick up from your brief, but you're saying now that you think the statutory right to counsel for a death-eligible or a person who's under a sentence of death is a way of distinguishing this case from the great mass of other 2255s that come along. Nor did I. So I didn't understand you to be proposing that limiting principle either. So let me clarify, and then I also want to get back to some other limitations in response to Judge Saini's question. The statement of the issues on page 5 of our opening brief is limited to an individual's sentence to death, and if we were unclear in the brief that 3599 is one possible way to limit that, I apologize, but I do think that it is a way to limit the sort of floodgates problem that I think Judge Saini has acknowledged. I think another way to think about this, and Chief Judge Wood, I think this goes to your more gestalt feeling about death being different, but Woodson and Williams, which we do cite in our briefs, made clear that there's a premium on a reliable determination of guilt in capital proceedings, and Martinez and Trevino and this court in Webster speaks to that precise concern. Did you have a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of the conviction? And in a death case, as informed by Martinez and Trevino, I think what that means is that you must have at least one opportunity, and if your appointed counsel for 2255 is ineffective in failing to raise a claim that on its face has some merit, then 2241 has to be the safety valve that gives you the opportunity to present that claim. So to go back to Judge Saini's question, if I might, I do think that there's a limitation here in the sense of the only rule we're asking this court to endorse is that 2241 be available for death-eligible defendants so that they have one opportunity to present an ineffective assistance of trial counsel claim. I think there are additional limitations. But wait, but it would be a little different than that. It would be one opportunity to raise all issues of ineffective assistance of counsel because he already had one very detailed opportunity in his initial 2255 to raise, I think there were 16 different ineffective assistance of trial counsel claims. With respect, Your Honor, I disagree that ineffective assistance of counsel can sort of be agglomerated into one undifferentiated claim. If you brought in ineffective assistance of counsel claim in your initial proceedings and it related to some issue, let's say it related to some issue about the guilt phase, but because your 2255 counsel was ineffective, it raised no issues about the penalty phase, I don't think this court would treat that as the same claim subject, if it were available, to a second or successive habeas condition. So if that's true, if you're saying that they aren't treated the same, if we take that premise, then how do you respond to what Judge Wood asked earlier? You're arguing that death-eligible defendants should get, or defendants who have been sentenced to death should get one opportunity for all claims to be addressed. He had his opportunity in the 2255. Now you're asking for a 2241 to raise additional claims of ineffective assistance of trial counsel. What about if he comes up, if you win this round, and he comes up with five or six other ineffective assistance? Sure. Where do we draw that line? Is it really he gets two opportunities, a 2255 and a 2241, and that's it? It is, Your Honor, and I think the reason is because Martinez and Trevino and Davila placed the emphasis on initial collateral review proceedings. It's initial when you don't have an opportunity to raise this specific claim on direct appellate review. And so the question then becomes where your 2255 counsel is ineffective, have you been given that's your initial collateral review opportunity, and where that is ineffective under Martinez and Trevino, you get some opportunity to press that claim. And 2241 is that opportunity. To answer your question directly, Judge Saini, if someone wants to press a 2241 argument and that fails and they then come back and want to press a second 2241 claim, I think that's dismissible as the government argues at the threshold because that is essentially a second or successive argument related to the initial collateral review proceedings. Would that be under the old abuse of the writ doctrines, or how would you get rid of it? It would. I think it would be under abuse of the writ doctrine, and I think this Court has recognized that abuse of the writ principles do, in fact, apply to 2241 petitions. And I don't think it's a wholesale return to abuse of the writ principles because the availability of 2241 is so tightly circumscribed. It's only for ineffective assistance of trial counsel. I could certainly see that it's tightly. If there's some way to restrict it to federal death sentences, there are not that many of them. And so that's a restricted pool. There are huge numbers, as the government points out, of pro se applicants under Section 2255 who filed their motions and they would like counsel, and sometimes rarely they get it, and most of the time they don't. So that's different. I do think that's different. I mean, I don't think there's been a marked increase in 2254 proceedings as a result of Martinez and Trevino, and we've got a natural experiment of roughly nine years, and there hasn't been the type of floodgates problem that this Court has been concerned about, and I don't think that there's reason to believe that there would be a similar floodgates issue if 2241 became available even in the broader circumstances where it was available to any federal inmate. But again, all we care about in this case, as the statement of the issues presented makes clear, is whether a federal death-eligible defendant has one opportunity to present his ineffective assistance or trial counsel. How does your limitation fit within the language of the Savings Clause? Specifically, you want to limit this to death-eligible defendants  You get to 2241 through the Savings Clause in 2255, which says that the remedy of the motion has to be inadequate or ineffective to test the legality of his detention. Right. How would you, that language, I don't know how you would read in a death-penalty-eligible defendant as an exception within that language. So again, I think it can come under two different auspices. I think one is the heightened standard of review for convictions and sentences in death cases. But that doesn't help with the plain language of the statute. That might be an equitable reason to do it, but if we're trying to differentiate for purposes of the statute and fitting this in a Savings Clause case. Well, so I think one way to do it is to say that the standard for adequacy of the underlying determination is higher in a death case than it is in your standard run-of-the-mill criminal case. And so is the availability of 2255 inadequate in a death case where the court needs to assure itself that the underlying determination was based on reliable evidence? So I think that's one way to read the limitation into the text of 2255B. I think the other way to do it is under 3599. So ineffective in 2255B, I think, calls to mind the effectiveness of the counsel. And you may not have a right to 2255 counsel in all cases, but you do under 3599. So were the safeguards available to you in your initial 2255 proceeding effective in that case? And that requires consideration of the procedural safeguards that are available to you in a death case, which does include the appointment of adequate counsel under 3599. If I might, I'd like to just move on to the underlying claims, or at least one of the underlying claims, beyond the procedural threshold question of 2241 and 2255. I'm, of course, happy to answer whatever questions the court has. I did reserve five minutes for rebuttal. Yes, you're not there yet. Can you see the clock? It says 7.50 past. I can. I just wanted to make sure that I was mindful. Right. I'll remind you if you need it. Okay. I appreciate it. So with respect to the three claims that Mr. Perkey seeks the opportunity to present for the very first time to a court on 2241 review, the first is the seating of juror 13. And to remind the court about the relevant facts, Mr. Perkey was sentenced to death by a jury that included a woman who was under any fair reading of the law, presumptively biased, and should have been excluded from the jury. Trial counsel failed entirely to note juror 13's disclosures and failed to strike her. So I take it these disclosures were in the record? I mean, how did you find all of these things?  It was obviously available to trial counsel, and it was in the record that 2255 counsel had access to, but they never discovered it. And there's a declaration from Laura O'Sullivan, who was trial counsel, who said, I've never seen this. This was never brought to my attention. So counsel didn't look at the questionnaires of the jurors who actually sat? Certainly not juror 13. He had another counsel, too, though. We don't know what that counsel did. I think that's right. I mean, there is no indication. So I think, Judge Saini, what you might be getting at is whether there was a strategic reason to see juror 13. There was none. The government has never hypothesized any. Trial counsel's affidavit, Laura O'Sullivan's affidavit, makes entirely clear that they were unaware of this issue. Is there any suggestion in the jury selection process, though, in the review of the questionnaires, you have an affidavit from one of his attorneys, but not the other? So co-counsel split things up all the time. Did the other lawyer look at the questionnaires, and maybe the lawyer who submitted the affidavit did not? I don't know the answer to that. There's certainly no evidence to suggest that this was a strategic move on Mr. Duchart's part. You'll recall that he submitted a 117-page affidavit in the trial court, sort of vouching for his own approach in this case. This was not an issue he ever attended to. The record, so far as it comes to the court on 2241, is that no one, until 2241 counsel, picked up on the fact that this juror had the same name and at the same age was the victim of a similar sexual offense. That juror, under this court's very, very clear case law, is presumptively biased as a matter of law, and her seating on the jury is a structural error. The failure to strike a juror, and I think if you look at this court's decision in Oswald, what the court said is it may be the case that the defendant is sure to lose on retrial, but the seating of a prejudiced juror is a structural error that requires a new trial in this case. You are in your rebuttal time, if you would like to wait. Sure, I'd like to reserve that time. That would be fine. Thank you. Thank you. All right, Mr. Casey. Police of Court, Brian Casey, appearing on behalf of the United States today. And what the appellant is asking this court to do is apply its precedent under which the appellant's claims would fail, stretch that precedent in a way that then applies to a statute and stretches it to the point that it breaks. And I know that the appellant's changed his argument, I think, in some significant ways here in oral argument, so I'll be addressing both what's in the brief but what's said in oral argument. But there's really three themes that I think need to be developed. And at least relying on the brief, the entryway into the argument that appellant uses in this court's law is Ramirez. Well, Ramirez has two issues. And the first issue is, is this a second and successive claim? And if it's a second and successive claim, then it can't be brought. Martinez, Trevino, none of those other considerations apply if the claim is, at its heart, a second and successive. The parties and Mr. Perkey's counsel have confessed that these claims would be second and successive. So under the plain language of Trevino, I mean, under the plain language of Ramirez, I'm sorry, they would lose. It would be just like the Adams case from this court and the claim would lose. What about going back to Martinez and Trevino, though, and saying that at least in death case, remember, the rationale that the Supreme Court was looking at was the Thompson case because for a very long time it had been understood that you didn't have a right to counsel under the Sixth Amendment or anything else in collateral proceedings, and thus you couldn't complain about ineffectiveness of counsel because if you didn't have any right to counsel at all, there was no such right. And the court took another look at that in Martinez and Trevino, and it says essentially, well, in these states, first there was the absolute rule, then there was the practical impossibility extension in Trevino. In these states, your first shot is actually on collateral review, and ineffectiveness of counsel is a fundamental claim. So you can bring it then, and if it's unsuccessful, you can go over to 2254 without being faced with procedural default or the other problems. And he's saying his client had a right to counsel at the 2255. The counsel performed inadequately, so it's not a Thompson problem. There was a right to counsel. Counsel performed inadequately. So why shouldn't somebody hear this claim about juror number 13, for example? I think there's a lot to be said about why Martinez and Trevino don't apply. And first, to the sort of new claim, and at least I understand it to be a new claim, that this is all limited to death penalty, Martinez wasn't a death penalty case. And nothing about its reasoning would limit itself to a death penalty. Instead, Martinez, Trevino, and Davila all limit themselves to initial collateral review. So there's the limiting principle. So I don't know that the death penalty limiting principle certainly does not come from that line of case. But moreover— If it comes from anything, it comes from the notion that you have to find a right to counsel to begin with before you can start complaining about ineffectiveness. That's correct, Your Honor. And so I think that goes to what my next point was going to be, and what is the right to counsel that comes out of those cases. And the Supreme Court clearly says it's not a constitutional right to counsel. Instead, it's something based in equity. And basically, I think of it more in terms of not a right to counsel, but rather an equitable remedy. And as an equitable remedy, it allows for what would be procedural defaulted claims to be heard for the first time in federal court. So what it really does is open the door to otherwise defaulted claims to federal court. And principally, what Martinez and Trevino does is what the Supreme Court had already done for 2255 and Massaro. And that is say that ineffective assistance to counsel claims do not get procedurally defaulted for your initial collateral proceeding in federal court. And so largely, Martinez and Trevino really have no application. Now, I know in this court, in Ramirez's court, made no distinction between 2254 and 2255, and found that these same equitable principles come to play. But the equitable principles come to play with regard to procedural barriers to having the claim heard in the initial 2255. And very importantly, Ramirez stays within the 2255 framework. It is asking the question within someone's initial 2255. This case is asking us to take it without. Mr. Casey, did the equitable principles come into play there because of the equitable nature of Rule 60B? Or because of Martinez and Trevino? Or both? I'm sorry, Your Honor, I didn't hear the last part of the question. Or because of Martinez and Trevino, or both? I think both. Because Martinez and Trevino clearly root themselves in equitable considerations. And 60B is itself rooted in equitable considerations. But so is equitable tolling. And in Lombardo, this case said, well, it doesn't go as far to equitable tolling, relying on prior precedent. And so I think in that regard, both Ramirez in relying on Maples as prior precedent, and Lombardo in relying on prior precedent, both really, they don't change the law that much. Well, Ramirez relies also on the Supreme Court's decision in Gonzales against Crosby. And basically, is this a real 60B, or is this a second or successive petition? In that instance, in the Ramirez situation as well as in Gonzales, it was a real 60B. And so you're still inside the boundaries of the original 2255. I agree, Your Honor. And I think that that's part of the holding. And I think that's part of why it's looking towards these equitable considerations and is doing it within the framework of 2255. Nothing about Ramirez, Martinez, Trevino, Gonzales, Davila, nothing about them address the issue of second and successive. How do you respond to Mr. Schoenfeld's argument that he's entitled to counsel in a death penalty case on the post-conviction, and that that changes death penalty cases? That's correct. There's a statutory right in death penalty cases. So how do you respond to that in terms of – I didn't understand that to be the gist of the argument in the briefs. So I'm giving you the opportunity to respond to that. And my answer is it creates no limiting principle. And the reason it doesn't create a limiting principle is, one, the supposed sources of this right were not death penalty cases. Martinez, Ramirez, and the other cases largely, they're not death penalty cases. So whatever this equitable right that they're trying to hang on, they would be extending it in some unforeseen way to say it's limited only to death penalty. But, two, let's talk about the statutory right to counsel. The statutory right to counsel in 2255 is required. It's there for all death penalty cases. But, in fact, it's the statutory ability to appoint counsel. So is there any way to police the effectiveness of these counsel under the statutory right you're talking about? Or can somebody just, you know, throw a brief or two in and go to sleep? Your Honor, I don't think that one of the – and the name of the case is not coming to me. I apologize to the court. But one of the considerations when this question was discussed in one of the cases was exactly that. And the answer was, well, oftentimes, because it's a cold record proceeding, just the nature of it makes it very difficult for counsel to be ineffective. It makes it hard for counsel to be ineffective? I'm sorry. I've been on this court for 25 years, and lawyers manage to be ineffective in lots of ways. Sorry. Fair enough, Your Honor. But I think going back to sort of the point I wanted to make in filling out the right to counsel is that all 2255s that go to a hearing, the defendant also has a right to counsel. In fact, you know, the court shall appoint if there's going to be an evidentiary hearing. And what I'm just trying to get at, if the cure for the occasional lawyer who's in a death penalty case and so appointed by pursuant to statute, if the cure is not giving somebody access to 2241 because of the savings clause, you know, the safeguard was put in there, and it broke. You know, the facts show that it broke. So if that's not it, then what is it in your view? It's just tough luck, and it's not really a real safeguard, or is there some other answer? Well, I think Lombardo would say that with regard to certain counsel failures, the answer is there isn't a remedy. So death is the response. So you put somebody to death because they had a bad lawyer who didn't raise a meritorious claim. That's pretty harsh, it seems to me. Well, I do think there are other equitable remedies, and I think if you're really talking about there being some procedural bar, something about counsel's performance created a procedural bar to hearing the claim, then I think 60B is the avenue. But if what we're talking about is claims just not brought, then there isn't an avenue. And that's what the second successive bar is there to do. So essentially what I'm hearing you say is that if counsel is appointed for a 2255, and the lawyer, let's say, doesn't spend five minutes doing an investigation, doesn't read the record, just kind of shows up and wings it in ways that, you know, the failure to investigate, for example, the Supreme Court on a number of occasions has called out as a way that performance can be constitutionally deficient. It seems like Wiggins against Smith. There are some other cases that have held that. I don't remember all the names right now, but it's a common holding. So that happens, and the failure to investigate also means that a potentially strong issue isn't brought to the court's attention, and it seems to me that would be prejudice as well. So that looks like Strickland satisfied. But you're saying, well, the person has to be turned away when they try to get some relief because you don't see how this fits within the savings clause. You just see it as an unenforceable. It's not really right. It's just something that maybe will work, maybe won't. Your Honor, I think that situation comes much closer to the abandonment situation in Ramirez. If we really have counsel that does nothing and obviously does nothing, that's much closer to abandonment in which there is an equitable remedy in 60D. Now, where that line is, where the line between Ramirez and Lombardo lies, this court hasn't developed yet, but it also doesn't need to in this case because this case is nothing like abandonment. In this case, post-conviction counsel brought 22 unique claims, 17 of which were for ineffective assistance of counsel, and I think six or seven were which were with some of the particular issues that are being brought in this case, creating a mitigation case. When that was denied, they filed a Rule 59 motion to reconsider. When that was denied, they filed with the district court a certificate of appealability. When that was denied, they filed with the Eighth Circuit a certificate of appealability. Then they filed their brief. They actually briefed issues that they weren't granted the certificate of appealability for, and the Eighth Circuit still considered them. When that was denied, they filed a petition for rehearing, and when that was denied, they filed a petition for cert. So, we're so far from the abandonment situation that I don't think the court needs to revisit where that line between where the equitable remedy kicks in, Ramirez, and where the equitable remedy doesn't, Lombardo, because here we have a competent counsel pursuing the claim diligently and competently. So, let me ask you this. Juror 13, which bothers me a lot. I mean, obviously, our system is only as good as, you know, a fair and impartial judge and a fair and impartial jury can be. It seems like a very simple measure would have been enough to reveal this match between Juror 13 and the victim in this case, and it seems that there's a very strong chance that the judge would have granted an appropriate motion to dismiss that juror for cause. We're not in the peremptory world. This would have been a dismissal for cause. So, do we rely on this jury anyway, even though it may have been tainted by a biased person? Your Honor, the first part of that answer is I think we're a long ways away from getting the bias to the bias question. I think they've done a good job of, I think Mr. Perkins' counsel has done a very good job of framing this in a way that has the appearance of bias. But when you peel back, the similarities are not so certain and not so similar, and what they don't find is a case in which, absent something else on the record, a juror would be stricken in this circumstance. Well, of course, they've never really had the chance to develop the record because of this, but we do know these facial similarities, which might have called for more in-depth voir dire and more in-depth examination. But at that point, Your Honor, we're getting into the question of trial strategy. Oh, I don't know. Why would the trial strategy be advanced by having a clone of the victim on the jury? Remember, especially for a death case where it only takes one person to recommend life in prison. We make a more fulsome recounting of the facts in our response to the district court, and so I refer the court to that. But in this instance, what we have is the same person's name. We know that. We also know that this was all disclosed to trial counsel. So what we're talking about are things, and this goes to the question earlier from the court, these matters were disclosed to the trial counsel. So this is not a matter of Juror 13 was not, was dishonest or withheld during voir dire. These were matters that were disclosed in jury questionnaires prior to voir dire. And the Ms. O'Sullivan affidavit that Mr. Schoenfeld refers to, both in that affidavit and in Mr. Dukart's affidavit, both counsels, they disagree about a lot, but they agree that Ms. O'Sullivan had nothing to do with the jury selection. That was Mr. Dukart's province. And Mr. Dukart's, this particular question doesn't show up in his affidavit because this was not an issue raised. And so he was responding to the issues that were raised in that proceeding. And there's nothing in the record. Is there anything in the record with respect to him and whether or not he saw this jury questionnaire or asked any follow-up voir dire questions on it? I know Ms. O'Sullivan says she wasn't involved in that, but that she doesn't say anything about him. He did. And in fact, we know he saw it because he asked a follow-up question to Jury 13 about a senior questionnaire. You have a young child. Will you be available for this proceeding? So from that question, we know that he did look at that questionnaire. But if you also look at the questionnaire, there would be reasons why Jury 13 would be a good juror looking from the perspective of Mr. Perkey. And again, we go back, we go through this in our response below. But she makes comments about she thinks that the number one cause of crime is having a bad family. Well, Mr. Perkey was not contesting that he raped his victim. That's your similarity that you're worried about. Mr. Perkey's defense wasn't that he raped. His defense was he didn't kidnap her in his mitigation case. And so in her questionnaire, she gives some real reason to think she might be sensitive to the mitigation issue. And so her similarity to the defendant really isn't on an issue that's contested. But she says things that you could easily, just on the face of it, see that might be useful with regard to having her on the jury. What about the mitigation point? Because another issue your opponents raise is that even after getting permission to hire a mitigation specialist, they first just hired some friend and the actual professional mitigation specialist really only had something on the order of two months to put a case together, which is, in death cases, a very, very short period of time. And so now at the 2241 stage, with much more time, they have really come up with a full record. I think the extent to which they're claiming the record is more fulsome, again, this court will need to refer the court to the papers. But particularly if you look at the Eighth Circuit's two decisions, I think to the extent they now say the record's more fulsome does not do the record justice. There was a fulsome mitigation case put on at trial. I think there were 18 witnesses called, many of the same people that were called. Now, today they say, well, these same people have more to say. I think that is very much a matter of degree and comes with its own skepticism that 20 years later someone's testimony's changed. But what you have is a very fulsome case with regard to Mr. Perkins' claimed psychological, emotional, physical abuse. He had a testimony at trial with regard to that. An additional amount of that was put into the 2255, and both the district court and the Eighth Circuit said, no, this is merely cumulative. And nothing else that's brought today, a lot of the same testimony is sort of hidden in different ways. So, for example, now they say, well, Mr. Perkins' brother would say that he was physically abused by his mother, and that wasn't testimony at trial. But the issue of Mr. Perkins being physically abused by his mother, sexually abused by his mother, was at trial. It was just brought in through a different witness. And so the substance of the claims are largely the same, and they're very duplicative. And I would refer this court to the Eighth Circuit's decision on his 2255, which goes into that in great detail. Can you, speaking of the Eighth Circuit, you made a big point in your brief about whether the Eighth Circuit law is the law that we ought to be following here, which would be quite unusual, or the Seventh Circuit law. And I wondered if you could explain why you think that matters, or which issue you think that matters to. It's actually a fairly narrow point of when Eighth Circuit law should apply. And the point is, with regard to Juror 13, whether or not the standard is made that Mr. Ducart was ineffective. And at the time of that trial, the Eighth Circuit had recognized that it had not clearly recognized an implied biased claim. And in fact, that its law was at least unclear on that issue. And when judging Mr. Ducart's effectiveness, the government's position is the only way to judge that is with regard to the law that he was practicing under. Is that because of forum shopping concerns, or what's the reasoning behind that rule? Well, Your Honor, I think the reasoning is he needs to follow the law of the locality he's practicing in. And if the law in that locality is that this is not an established claim, then he needs to make strategic decisions based on that. If it was an established claim, then maybe strategically he approaches it differently. But if it's not, then there's certain considerations that the lawyer will need to take into account. So you're saying in order to assess his ineffectiveness at the time, we have to look at the law in the jurisdiction where the trial was ongoing? That is exactly the point, Your Honor. In order to assess his ineffectiveness in not moving to exclude Juror 13 without further voir dire, just as presumptively biased, you would need to look at Eighth Circuit law. And in Eighth Circuit law, that claim was not available. Was it unavailable or just not as strongly available? I don't know that the Eighth Circuit would have said that this was not competent evidence. In the circumstance of presumptive bias with regard to someone who is not a participant or a relative, the Eighth Circuit had earlier cases that say it wasn't available. And then they had some in-between cases that say it was or it's possibly. Right. And so I'm just saying presumptive bias is a very strong point to make. But implicit bias isn't the same thing as presumptive bias. You could try to show without resting on a presumption that there was nonetheless bias that you could infer from the circumstances. And in this circumstance, the actual allegation of ineffectiveness is that despite asking her some follow-up questions and besides giving her the commitment that she would be unfair, that he didn't ask specific follow-up questions. And there's no case that I'm aware of and there's no case that they cite where a juror disclosed the ground for alleged bias, said that they could be impartial, but then were nonetheless there was error found in not striking that juror. And that's the case here. And so what we've fallen back to is the one lawyer who did do the jury of Vordir, we know that he saw, we can divine from the record that he saw her questionnaire. And we know that he didn't ask these follow-up questions. And the rest is pure speculation. And there's just as ripe speculation that he had good trial reasons not to as there is speculation that he did. So I would like to go back for one minute to Martinez-Trevino. A big part of what the government has argued is that, you know, we'll be stuck with an infinite line of post-conviction proceedings if we were to agree with Mr. Perkey. And it seems to me the same could be said about the 2254s in Martinez-Trevino, except that it hasn't happened. And there are devices to curb abusive litigation, whether or not there's the Anti-Terrorism Act and so on. So I wonder whether that's really a sound reason to make a legal decision to say that an avenue is not open to somebody. Well, there's a fundamental difference between bringing additional claims that sound in 2255 versus bringing an initial claim in 2254. And that initial claim in 2254 is then subject to 2254's restrictions on second and successors. And so one of the reasons is that you haven't seen the great uptick in claims is because Martinez-Trevino say nothing about second and successors in the 2254 context. The other reason you don't see the great uptick in claims is that a prisoner still has their right to bring their initial 2254. And what Martinez-Trevino are about are what claims they get to litigate within that proceeding. And so because Martinez-Trevino opens up the door to additional claims, but the fact of the filing and the fact that the court would have to deal with the filing again wouldn't necessarily greatly increase because the prisoner still has the right to bring their initial 2254. The argument in this case is about second and successors. And that's where the great increase of filing is going to come from. And Martinez-Trevino are very clear. They apply to pro se defendants just as well as they apply to the defendant with counsel. And I think in Idaho versus Garza, the Supreme Court observes that 95% of federal 2055 claims are brought or at least initially brought pro se. And so you really don't have a limiting principle there. If you extend Martinez-Trevino to the savings clause, not to the initial filing, that's where the additional claims would come in. And they would come in contrary to all the ways that Congress sought to limit those claims. Well, Congress was certainly, I agree with you, that Congress was looking for some kind of finality in these claims. There's no doubt about that. But on the other hand, it's a balance. And to shut out a potentially meritorious claim that didn't get raised because there was counsel that was so ineffective and there was so much prejudice that the Strickland standards are applied doesn't really show up in Congress's discussions at all. So I suppose that's where I come back to the question whether there is, in fact, any reasonable expectation that you're going to have counsel or effective counsel in 2255s. Most of the time the answer may be no. But maybe in the death cases, maybe there will be some other kind of case that the answer might be yes. Well, and then, Your Honor, I think that line of what that expectation is also only goes so far. And Martinez and Trevino do say it has to be a substantial claim. And none of these are. One of the claims is just a rehash of mitigation that's already been brought. And so he's had that opportunity. The savings clause is about the opportunity to bring the claim. And he had the opportunity to bring all of these claims. There's nothing structural that prevented it. But we know he had the opportunity to bring the mitigation claim because he did. And second, guessing the way or the manner is not what the savings clause is about. The third claim, the one we haven't talked about yet, is pure speculation. I know in the reply brief, I know in our brief we say, well, there's no evidence that Mr. Dukart told Mr. Perkey to lie. And their reply brief is we don't need evidence. Well, it's a 2250. It's a habeas petition. So, in fact, you do. Habeas petitions are brought. They have to be certified under penalty of perjury, and they do need to have evidence. And so that would clearly be denied in the first instance habeas as a conclusory allegation. And it would be denied in the first instance. It's entirely meritless. So two of those claims, one has been brought. One is a conclusory allegation that's meritless. And so now you're left with the Juror 13 issue. That you cannot find deficient performance where the law was unsettled. And so all three, none of these three claims are substantial claims. And so I do think that at least with regard to this case, there was no abandonment. And in any event, the claims that were found are not substantial. Okay. I think we'll take it from there. So, Mr. Schoenfeld, do you have anything further? I do, Your Honor. I'll try to be very brief. So I want to address two points. The first is just to return to Juror Number 13. No court has ever addressed this issue. No court has ever addressed the question of whether Juror 13 should have been seated on this jury and whether trial counsel was ineffective for failing even to examine the juror on this question. I would point the court to page 1170 of the appendix, which is Ms. O'Sullivan's declaration, which says, very clearly, I had no knowledge until I was shown the questionnaire by Mr. Perkey's current counsel that Juror Number 13, who served on the petty jury of Mr. Perkey's trial, had disclosed that she was the victim of an attempted rape when she was 15 years old. She acknowledges that she didn't play a role in voir dire, but she says, I don't believe Fred, Mr. Duchart, noticed the disclosure either because he never mentioned it, nor did he raise it during voir dire. So the only record evidence is a declaration from his trial counsel saying that this issue was not even detected by the lawyer responsible for this. He slept on this claim. And so we come to the question of whether there was any strategy that could have justified the failure even to examine the juror on this. And I didn't hear the government offer anything that would account for a strategic decision not to examine the juror on this. What about the argument that law where the lawyer was practicing was less favorable than perhaps it might be today or it might be in the Seventh Circuit? I think the Eighth Circuit law is entirely clear that under circumstances like this, a juror is presumed to be biased on its structural error. Do you think it was clear at the time or you say it's clear now? No, I think it was clear at the time. The case the government relies on is a 2008 decision, Sanders v. Norris, which says that there may be some lack of clarity. This is an ineffective assistance of counsel claim. They say there may be some lack of clarity about the circumstances under which this court might recognize implied bias. The cases they point to, as we explained in our brief, for circumstances where only a showing of actual bias suffices, is a line of cases that relates to a juror sitting successively in the same trial, in the same case. The court points to case law from the Eighth Circuit that makes clear that they recognize implied bias under certain circumstances and that court's case law and this court's case law go back to the Supreme Court's decision in Smith v. Phillips where Justice O'Connor and concurrence made this precise point. There are circumstances where you cannot allow a juror, no matter what they say, to be presumed to be impartial in a jury. So, Mr. Sheinfeld, are you asking us then to apply Seventh Circuit law? It looks like from page 18 of your brief, footnote 9, you are. We're struggling with this question of the applicable law. I don't think it matters. I mean, this is the same as a choice of law analysis where if California's law and New York's law are the same, you don't need to do the analysis. I don't think the court needs to reach this question. If you look at the Supreme Court's decision, Smith v. Phillips, and you look at the way that in between 1998 when Mr. Perkey, when the crime was committed, and 2003 when he was convicted, what the state of the Eighth Circuit law looked like on this specific question, not the exception or not its outlier case, but how Smith v. Phillips was properly interpreted, you can apply bias in these circumstances. And what this court said in Hunley v. Cadenas is that the victim of a crime similar to the one at issue cannot be presumed to be impartial and, in fact, is presumed as a matter of law to not be impartial. That is a structural error that this court needs to— that I think with no explanation for why a trial lawyer would desist from questioning the juror on this, I think the court presumes bias as a matter of law, and the juror should not have been seated. And even if there was a question of actual bias, even if that were the standard here, again, there would need to be some explanation of why the trial lawyer failed to examine the juror on this point to ensure that they were not in fact biased. There is no strategic explanation, none, none that the government has posited, and certainly nothing Mr. Duchart said in his 117th page affidavit that would justify this. He just missed—he just slept on this issue, which is a giant honking issue on the face of the record that neither trial counsel raised nor 2255 counsel raised. I want to go very quickly before my time is up just to the limiting principles. I do think the issue presented in this case, as it's clear on page 5, is whether a death-eligible prisoner has a right to 2241. I think the court can limit it in that way based on 3599 or the Woodson-Williamson argument. I also think that there is a significant, very concrete backstop for any concerns about the abuse of the writ in very well-established case law in McCleskey v. Zant, Fay v. Noya. When Congress enacted AEDPA, it did not touch the savings clause. It looks today exactly as it did pre-AEDPA, and this court can use the same pre-AEDPA abuse of the writ principles in policing any concern about a deluge of claims arising from this case. All right. Thank you very much. We appreciate the efforts of both counsel. The court will take this case under advisement and be in recess.